**UNITED STATES of America, Plaintiff,**

v.

**Claudius SMITH, et al., Defendants.**

**Crim. No. 82–0044–C.**

United States District Court,
D. Massachusetts.

May 24, 1984.

Walter Prince, Brown & Prince, Boston, Mass., for Claudius Smith.

Martin Leppo, Boston, Mass., for Edward De Jesus.

Robert P. Leighton, Morton Katz, New York City, for Romano.

Edward Panzer, New York City, Brian T. Callahan, Medford, Mass., for Torres.

John Bonistalli, Carhart, Bonistalli & McCarthy, Boston, Mass., for Veronica De Jesus.

Paul O'Rourke, Boston, Mass., for Haynes.

Alan D. Rose, Joseph K. Keefe, Nutter, McClennen & Fish, Boston, Mass., for Amado.

Frank G. Kelleher, Boston, Mass., for Barber.

Richard Glovsky, Boston, Mass., for Hullum.

W. Hurly, Wendie Gershengorn, William Homans, Homans, Hamilton, Dahmen & Marshall, Boston, Mass., for Shearer.

Andrew Good, Boston, Mass., for Griffin.

John B. Lawlor, Boston, Mass., for De Jesus et al.

Wm. Shaw McDermott, McDermott & Rizzo, Boston, Mass., for Variste.

David Twomey, Dwyer & Murray, Boston, Mass., for Woodbury.

Michael J. Liston, Palmer & Dodge, Boston, Mass., for Ledbetter.

Brackett Denniston, John H. LaChance, Dennis Kelly, Thomas J. Curley, Jr., Tobin Harvey, Boston, Mass., for the U.S.

## MEMORANDUM

CAFFREY, Chief Judge.

This case came before this Court for a hearing after a remand entered by the Court of Appeals for the First Circuit in this case and fifteen other cases consolidated with it for appeal. *United States v. Smith,* 726 F.2d 852 (1st Cir.1984). In its unanimous *en banc* opinion, the Court of Appeals determined that "there must be further exploration in the district court of the existence and extent of authorizations specifically given by the district attorney" for the wiretap warrant applications in this case. 726 F.2d at 859–60. This Court held a hearing for that purpose on April 24, 1984, at which the defendants were represented by thirteen attorneys.[1] The government called as witnesses Suffolk County District Attorney Newman Flanagan and his former Assistant District Attorney, Gary Crossen. The two witnesses were

---

1. Two of the original sixteen defendants, Edward Gabree and Joanne Amado, died during the pendency of the appeal. For purposes of this hearing only, defendants Claudius Smith and Rhonda Washington were represented by the same attorney.

sequestered prior to the hearing. Only two defense attorneys took advantage of the "opportunity to test the sufficiency of the government's documentation" by cross-examining the District Attorney, and only one attorney elected to cross-examine Assistant District Attorney Crossen. 726 F.2d at 860. The Court then specifically inquired of the defense attorneys present whether any one of them had any additional cross-examination questions for Mr. Flanagan or Mr. Crossen, and all indicated that they did not. Defendants offered no evidence of their own at the hearing.

The scope of this Court's inquiry at the April 24th hearing was limited to resolving whether the state officials who applied for the wiretap warrants in this case complied with M.G.L. c. 272, § 99 F(1), which provides:

> The attorney general, any assistant attorney general specially designated by the attorney general, any district attorney, or any assistant district attorney specially designated by the district attorney may apply ex parte to a judge of competent jurisdiction for a warrant to intercept wire or oral communications.

The requirements of § 99 F(1), as set forth by the Court of Appeals in *United States v. Smith*, include not only those contained in the statutory text adopted by the legislature, but also the supplementary requirements imposed by the Massachusetts Supreme Judicial Court in *Commonwealth v. Vitello*, 367 Mass. 224, 327 N.E.2d 819 (1975). In *Vitello*, the Supreme Judicial Court read into § 99 F(1) the following specific requirements:

> 1. It interpreted "specially designated" to mean "that an assistant district attorney ... must bring the matter for examination before his senior officer, the district attorney"; ...
> 2. "[T]he district attorney is to determine whether a particular proposed use of electronic surveillance would be consistent with the overall policy".... This determination requires "not a cursory but full examination by the district attorney of the application"....

> 3. The district attorney must "authorize each such application in writing", ... "the special designation of [an] ... assistant district attorney must be on a case by case basis with written authorization"....

*United States v. Smith*, 726 F.2d at 857–58. (Citations omitted). This Court must now determine whether these requirements have been met in this case.

■ Defendants argue in their post-hearing memorandum of law that this Court may not consider *post hoc* testimony in reaching its decision. I rule that there is no merit in defendants' contention. As the government accurately and succinctly points out in its post-hearing brief:

> [D]efendants' argument in this regard is extraordinarily far-fetched in light of: (a) the nature of the issue remanded by the First Circuit; (b) the *en banc* Court's characterization of the "particularistic [and] detailed factual inquiry" to be undertaken by this court, 726 F.2d at 860; (c) the *en banc* Court's own consideration of *"post hoc" affidavits* in the course of its opinion; and (d) the numerous and unanimous federal court opinions endorsing *"post hoc"* clarification by affidavit or otherwise of application-authorization inquiries. *See, e.g., United States v. Chavez*, 416 U.S. 562 [94 S.Ct. 1849, 40 L.Ed.2d 380] (1974).

It should also be noted that defendants' contention is based on state law; this Court's review is being conducted under federal standards set by federal law. Accordingly, the Court will make its determination based on the record of the case as if stood on appeal plus the evidence offered at the April 24th hearing.

■ On the basis of the testimony of the government's two witnesses—Newman Flanagan, District Attorney for Suffolk County, and Gary Crossen, former Assistant District Attorney—I find the following facts. I find that Assistant District Attorney Crossen brought five initial wiretap applications and five renewal applications to District Attorney Flanagan for his examination. For each original application, Dis-

trict Attorney Flanagan was given the affidavit, the application, the warrant and the special designation letter. The identical documentation, minus the special designation letter, was provided to Mr. Flanagan for each renewal application. I find that, on each of these ten occasions, District Attorney Flanagan fully examined the documents submitted to him. I find that, on several occasions, Mr. Flanagan was initially dissatisfied with the contents of the documents and, consequently, revisions were made by Mr. Crossen. I find that, with respect to each of the five original applications and five renewal applications, District Attorney Flanagan determined that the proposed use of electronic surveillance was consistent with his overall unwritten policy regarding wiretaps.

I find that, after he made a determination with respect to each proposed initial and renewal wiretap application in this case, District Attorney Flanagan informed Mr. Crossen that he approved the proposed application and that he authorized Mr. Crossen to present the application to the court. I find that in the case of nine of the ten applications Mr. Flanagan personally communicated this information to Mr. Crossen and executed the special designation letters. With regard to the fifth initial application, however, I find that District Attorney Flanagan was outside the Commonwealth when he made his determination. Consequently, the District Attorney's approval was conveyed to Mr. Crossen by First Assistant District Attorney Paul Leary upon instruction from the District Attorney. Mr. Leary, acting pursuant to orders from Mr. Flanagan, executed the special designation letter authorizing Mr. Crossen to apply for the fifth initial wiretap. I further find that Mr. Crossen was fully aware and conscious of the fact that he had no authority to apply for a wiretap warrant on his own without such direct approval from District Attorney Flanagan; and I find that Mr. Crossen never did so as to any wiretap involved in this case.

I find that, as a matter of policy, an assistant district attorney supervising a wiretap investigation is instructed to provide District Attorney Flanagan with reports as to developments in the case on an "almost daily" basis. I find that Mr. Crossen was aware of this policy and that, on at least one occasion, Mr. Crossen was specifically instructed by Mr. Flanagan to report to him daily on the investigation at issue. I further find that Mr. Flanagan was kept informed of the developments in this case on an "almost daily" basis.

On the basis of the testimony, I find that the policy of the District Attorney's Office at all relevant times was that no wiretap renewal would be sought unless the District Attorney had previously examined the application documents. Amendments to wiretap warrants, however, would at times be presented to the court before the District Attorney was informed of the matter. I find that amendments to certain of the wiretaps challenged here were presented to the court without the District Attorney's prior knowledge.

Mr. Flanagan testified, and I find, that during his five-year tenure as District Attorney he has authorized the use of wiretaps in no more than ten investigations. He further testified that he has turned down more applications from his assistants for leave to apply to a Superior Court Judge for warrants than he has approved. I find that the District Attorney is reluctant to authorize wiretaps in most situations because of the substantial costs associated with that means of investigation, which he testified is the most expensive investigatory technique used by his office. From this I infer and find that he does not allow applications routinely or as a matter of course.

Defendants do not substantially dispute these facts. Rather, they argue that the absence of documentation, created contemporaneously with the event, evidencing the District Attorney's review and approval of the applications prevents the government from meeting its burden of proof. The government admitted at the April 24th hearing that, except for the special designation letters, it has no documents directly

showing that the District Attorney reviewed the warrant applications or authorized them to be submitted for approval by the court. This admitted lack of documentation, however, is not fatal to the government. The Court of Appeals remanded this case to this Court because it thought "that defendants should have some opportunity to test the sufficiency of the government's documentation and that the government should have an opportunity to try to remedy any perceived deficiency." *United States v. Smith*, 726 F.2d at 860. The Court stated, for instance, that "[t]he absence of a compelling signature on a critical document can be remedied by proof of actual authority." 726 F.2d at 859. It is clear to this Court that, similarly, the absence of documentation also can be overcome by proof of actual authority. I find that both Mr. Flanagan and Mr. Crossen testified truthfully and that their testimony proved that Mr. Flanagan gave Mr. Crossen actual authority to apply for the warrants.

I rule that the government has adequately supplemented its limited documentation with credible testamentary evidence and that it has proved that District Attorney Flanagan actually authorized Assistant District Attorney Crossen to apply for the initial and renewal wiretaps at issue in this case. Based on these findings of fact, I further rule that the District Attorney has satisfactorily complied with all the statutorily- and judicially-created requirements of M.G.L. c. 272, § 99 F(1).

■ The final issue before this Court involves defendant Clarence Variste, the only defendant who was not named in an initial or renewal warrant application. Defendant Variste was added to the wiretap on a telephone in Randolph by amendment on January 4, 1983; this was the last substantive amendment to the last renewal on the Randolph telephone. Defendant Variste argues that the January 4, 1983, amendment was not specifically authorized by District Attorney Flanagan [2] and, there-

fore, the seizure of the evidence used to convict him was unlawful.

The defendant's argument centers on the language of M.G.L. c. 272, § 99 F(2)(b), which requires that an application for a wiretap name "a particularly described person" whose conversations are to be seized. Defendant Variste asserts that the "particularly described person" requirement of § 99 F(2)(b) applies to applications for an initial warrant, applications for renewal of an initial warrant, *and* applications for amendment of an initial or renewal warrant. The defendant argues that, because of the particularization requirement, an amendment of the warrant *is required* when the District Attorney wishes to expand the wiretap to include newly-identified persons. Defendant Variste further argues that, because the amendment seeks to conform the warrant to the particularization requirement of § 99 F(2)(b), that amendment is subject to the requirement of § 99 F(1) that the District Attorney authorize applications for a warrant.

No case has been cited by defendant, or found by this Court, which supports defendant Variste's expansive reading of § 99 F(2)(b). Neither the Massachusetts wiretap statute, M.G.L. c. 272, § 99 F, the federal wiretap act, 18 U.S.C. §§ 2510–20, nor the case law require that amendments even be filed. *But cf.* N.Y.Crim.Proc.L. § 700.65(4) (New York wiretap statute requires that an amendment be filed "as soon as practicable" when evidence of a new crime is discovered). The government characterizes the filing of amendments in Massachusetts wiretap cases as merely "a matter of responsible practice and [a means] to inform the monitoring judge." In light of the absence of authority to the contrary, the Court accepts the government's characterization and, as a result, rejects defendant Variste's argument. Accordingly, I rule that the filing of the amendment which named defendant Variste was lawful under M.G.L. c. 272, § 99 F.

**2.** The Court found above that some of the wiretap amendments in this case were presented to

the court without the District Attorney's prior knowledge and approval.

For these reasons, I rule that all the wiretaps in this case were properly authorized as to all defendants.

Order accordingly.